IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CASSANDRA JOHNSON,**<br>            **Plaintiff,**<br><br>          v.<br><br>**NATIONAL PARK SERVICE-**<br>**DEPARTMENT OF THE INTERIOR,**<br>**UNITED STATES OF AMERICA AND**<br>**CITY OF PHILADELPHIA,**<br>            **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 24CV1304** |

### MEMORANDUM OPINION

Plaintiff Cassandra Johnson tripped and fell on an uneven walkway within the Independence National Historic Park ("the Park"). She now brings claims against the United States of America ("the Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, 2671, *et seq.*, for negligence, alleging that the National Park Service ("NPS") failed to inspect for, remedy, and warn patrons about hazards on the walkway, and that the failure to do so caused her fall and injuries.

The Government moves to dismiss the claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that it is entitled to sovereign immunity. For the reasons below, the Government's Motion shall be granted.

**I.    FACTUAL BACKGROUND**

Congress first established the Park as a national historic park in 1948. *See generally* 16 U.S.C. § 407m. The National Park Service, a bureau within the Department of the Interior, now manages the Park, in addition to the rest of the country's national parks. 54 U.S.C. § 100101(a). According to the Park Superintendent's declaration, the Park contains more than 68 miles of walkways, including over 13 miles of sidewalks and paved trails, "nearly all of which are stone

1

or brick."  The Park's maintenance staff totals 48 positions, but the Park rarely sustains a full fleet of maintenance personnel "due to retirement, staff transfers, and the length of time it takes to fill vacant positions."

Out of those 48 staff members, two are "masons who are responsible for stone and brick maintenance across" the Park's "approximately 55 acres."  Those two masons inspect and repair the stone and brick structures in the Park, "including the brick and stone sidewalks and walkways."  The Park's "sidewalks and walkways" are also "subject to informal visual inspection."  That informal inspection is performed by a variety of Park employees who, as they go about their duties, "report any observed conditions of note, including potential hazards, to the maintenance staff for further review and possible repair."[1]

Johnson alleges that she was badly hurt when, walking along a stone walkway in the Park, she tripped and fell on an uneven portion of the path.  Some two years later, Johnson filed an administrative claim with NPS, citing the uneven walkway that allegedly caused her fall.  NPS denied the claim, and Johnson sued the Government, NPS, and the City of Philadelphia under the FTCA.  In her Complaint, Johnson alleges that the Government was negligent because it failed: (1) to inspect for hazards on the walkway; (2) to maintain or repair the walkway; (3) and, to warn Park patrons about the walkway's hazard.

## II.  LEGAL STANDARDS

When evaluating a Rule 12(b)(1) motion to dismiss for lack of subject–matter jurisdiction, "a court must first determine whether the movant presents a facial or factual attack."

---

[1] In *Borlandoe v. United States*, 86 F. Supp.2d 493, 494 (E.D. Pa. 2000), a district court found that the Park had a policy that required its staff to inspect brick sidewalks and immediately repair any defect where a brick was raised by a quarter of an inch above the rest of the walkway.  In his declaration, the Park Superintendent stated that he and his staff were unaware of such a policy, that the policy was not in place today, and that his staff could not find any such policy in their records.  Johnson did not dispute any of that in her response to the Government's Motion.

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A facial attack challenges the sufficiency of the pleadings, "whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA*, 535 F.3d at 139 (internal brackets and quotation omitted). Facial challenges are governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *In re Schering Plough Corp.*, 678 F.3d at 243. When reviewing a factual challenge, however, a court is permitted to "make factual findings which are decisive to the issue." *CNA v. United States*, 535 F.3d 132, 139, 145 (3d Cir. 2008). In such cases, plaintiffs bear the burden of proving subject–matter jurisdiction, and "no presumption of truthfulness attaches to the allegations of the plaintiffs." *Id.* at 139, 145.

Here, the Government has launched a factual attack by supplementing the factual allegations in the Plaintiff's Complaint with extrinsic evidence. *See DeMolick v. United States*, No. 33-1973, 2023 WL 3562979 at *2, (3d Cir. May 19, 2023) (approving district court construing Rule 12(b)(1) motion as factual attack because it introduced new facts).

### III.  DISCUSSION

#### A. The FTCA Waives Sovereign Immunity

"The United States of America, as a sovereign, is immune from suit unless it consents to be sued." *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008). In passing the FTCA, the United States consented to be sued for:

> claims against the United States, for money damages … for … personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Johnson's claim against the Government falls within the scope of that waiver because it seeks money damages for personal injury sustained due to the alleged negligence of Government employees acting within the scope of their employment: namely that NPS employees negligently failed to inspect for, remedy, and warn of hazards on a walkway in the Park.

### B. Discretionary Function Exception to the FTCA's Waiver of Sovereign Immunity

The FTCA, however, carves out an exception to that waiver—meaning sovereign immunity still applies—for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary function exception exists "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Merando*, 517 F.3d at 164 (internal quotations omitted).

In *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991), the United States Supreme Court set up a two–step "inquiry to guide the application of the discretionary function exception." *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000). At step one, a court decides whether the employee's decision involves an "element of judgment or choice." *Id.* (quoting *Gaubert*, 499 U.S. at 322). Step one is not satisfied—meaning the discretionary function exception does not apply and the FTCA waives sovereign immunity—if a "federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,"

because "the employee has no rightful option but to adhere to the directive." *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

At step two, "even if the challenged conduct involves an element of judgment"—meaning there is not a "statute, regulation or policy" prescribing government action—a court must still "determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Mitchell*, 225 F.3d at 363 (quoting *Gaubert*, 499 U.S. at 322-23). "Only those decisions 'susceptible to policy analysis' are" meant to be "protected by the exception." *S.R.P. ex rel Abunabba v. United States*, 676 F.3d 329, 336 (3d Cir. 2012) (quoting *Gaubert*, 499 U.S. at 325). The "susceptibility analysis is not a toothless standard." *Cestonaro v. United States*, 211 F.3d 749, 755 (3d Cir. 2000) (internal quotations omitted). The Government must establish that there exists a "'rational nexus' between the Government's decision and 'social, economic, and political concerns.'" *S.R.P.*, 676 F.3d at 336 (quoting *Cestonaro*, 211 F.3d at 759). And "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. The Government bears the burden of proving that the plaintiff's claims fall within the discretionary function exception's scope. *Merando*, 517 F.3d at 164. However, the Government need not prove that it "actually balanced economic, social, and political concerns" in reaching every decision it does. *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988). The "relevant question is not whether an explicit balancing is proved, but whether the decision is susceptible to policy analysis." *Id.* at 121.

The parties agree that *Gaubert*'s first step is met, because no federal statute, regulation, or policy, prescribes the manner in which NPS must inspect for, remedy, or warn of hazards on

walkways.  The parties disagree about step two: whether NPS's judgments about how to inspect for, remedy, or warn of hazards on walkways within the park are "the kind that the discretionary function exception was designed to shield."  *Mitchell*, 225 F.3d at 363 (quoting *Gaubert*, 499 U.S. at 322-23).

For the following reasons, the Court finds that Johnson's claim falls within the FTCA's discretionary function exception, so sovereign immunity bars her claim.  First, "governmental policy, as expressed . . . by statute" and "agency guidelines," allows park managers to "exercise discretion," so "it must be presumed" that NPS's decisions about the maintenance of such parks "are grounded in policy when exercising that discretion."  *Gaubert*, 499 U.S. at 324.

The statute establishing the Park triggers the grounded-in-policy presumption.  When Congress created the Park, it authorized the Secretary to maintain it "in such manner as he shall consider to be in the public interest," and allowed that he carry out those functions "in his discretion and notwithstanding other requirements of law."  16 U.S.C. § 407s.  In implementing that charge, NPS promulgated the 2006 National Park Service Management Policies, which the Government states (and Johnson does not contest) were in place when Johnson fell.  *See generally* Nat'l Park Serv., *Management Policies 2006*, available at https://www.nps.gov/ orgs/1548/upload/ManagementPolicies2006.pdf, [https://perma.cc/9T6C-VM2E].  Those policies establish that the "means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing."  *Id.* at 105.  NPS policy recognizes that Park management should exercise discretion in maintaining the Park's walkways, because "[s]ome forms of visitor safeguards typically found in other public venues—such as fences, railings, and paved walking surfaces—may not be appropriate or practicable in a national park setting."  *Id.*  In fact, NPS

policy specifically lists "decisions about whether to install warning signs" as one of the decisions that Park management may make at their own discretion. *Id.* These policies set up the presumption that NPS's decisions about the maintenance of parks "are grounded in policy when exercising that discretion," and are therefore within the scope of the discretionary function exception. *Gaubert*, 499 U.S. at 324.

Indeed, regarding NPS's judgments about inspection, the Third Circuit has held that NPS's decisions about when and how to inspect for potential hazards from fallen trees on a roadway are subject to the discretionary function exception because NPS cannot "inspect every tree in the" park, and may decide "to expend the bulk of its resources" on other areas. *Merando*, 517 F.3d at 174. As for NPS's decisions about whether to remedy certain hazards instead of others, the Third Circuit has held that the discretionary function exception applied to the NPS's choice not to reconstruct a road that ran through the Delaware Water Gap National Recreation Area, because in doing so, the NPS was "balanc[ing] its mission of preserving the parklands against the severity of design flaws" while preserving "its finite resources." *Mitchell*, 225 F.3d at 364, 366. NPS's choices about when and how to warn of those hazards are, too, "precisely the type of policy choice that the discretionary function exception prohibits" courts "from second-guessing." *S.R.P.*, 676 F.3d at 337 (NPS decision to warn about some hazards, but not more remote ones, subject to the discretionary function exception).

All of that is true here. NPS has set up its walkway inspection and maintenance system to balance the aesthetic value that stone walkways bring to the Park against safety concerns. It strikes that balance by employing two masons, who "work full-time on stone and brick inspection and repair," and by ensuring that all walkways are "subject to informal visual inspection by" Park employees who are "instructed to report any observed conditions of note,

including potential hazards." It chooses not to pave over each walkway because "[t]he stone and brick sidewalks and walkways are important features that enhance the historic and cultural character of the Park." NPS makes those choices subject to financial constraints, as the Park usually must secure additional funding, or reallocate other funds to maintain the Park. Each of those are policy judgments, and therefore, the kinds of decisions that the exception is designed to protect. *Id.* at 335-36.

Johnson argues that two Third Circuit cases compel a different conclusion. In *Gotha v. United States*, 115 F.3d 176, 178 (3d Cir. 1997), the Third Circuit held that the "United States Navy's failure to provide routine safeguards on a footpath leading to a structure under its control" was not subject to the discretionary function exception, and therefore sovereign immunity remained waived. And in *Cestonaro*, 211 F.3d at 751-52, the Third Circuit held that the exception did not apply when NPS "was aware that crimes had occurred" in a parking lot that the agency maintained, yet "had done nothing to deter parking" there at night, and had instead installed lighting on the lot, attracting nighttime parking to the high crime area. In Johnson's view, those cases stand for the proposition that the discretionary function exception does not apply to "mundane, administrative, garden-variety, housekeeping problem[s]." *Gotha*, 115 F.3d at 181.

Those cases are distinguishable from this one. In *Gotha*, the Third Circuit explained that the Navy's decision not to install a staircase with handrails, rather than the unpaved path already in place, had nothing to do with the Navy's mission of protecting national security. *Id.* at 181-82. In other words, there was no "rational nexus" between the challenged conduct and the agency's mission. *See S.R.P.*, 676 F.3d at 336 (quoting *Cestonaro*, 211 F.3d at 759). In explaining that point, the Third Circuit distinguished a Fourth Circuit case where NPS's decision

8

not to build a guardrail alongside a roadway was subject to the discretionary function exception, because it was "balancing . . . safety, aesthetic, and environmental" interests, "as well as available financial resources." *Id.* at 182 (citing *Bowman v. United States*, 820 F.2d 1393, 1395 (4th Cir. 1987)).  Those are the same competing interests that NPS balances in managing the Park's walkways—the type of interests that form a rational nexus with Congress's charge to "conserve" the Park and "provide for [its] enjoyment."  16 U.S.C. § 407s.

Johnson's reliance on *Cestonaro* fares no better.  There, the Third Circuit expressly recognized that had NPS "argued that its decision not to install further" safety measures or warning signs in a high crime parking lot was predicated on a balancing of aesthetic interests against safety interests, the case might have come out differently.  *Cestonaro*, 211 F.3d at 757 n.6.  That is because NPS "may balance aesthetic and safety interests and avoid liability through the discretionary function exception."  *Id.*  Those aesthetic and safety interests, in addition to financial constraints, are the exact interests that NPS balanced in designing its system for walkway inspection and maintenance.[2]

An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

---

**WENDY BEETLESTONE, J.**

---

[2] Both *Gotha* and *Cestonaro* also contained an element that this case does not.  As the Third Circuit noted in a later case, in *Gotha* and *Cestonaro*, there was evidence in the record proving that the Government was already aware that there was a risk of the particularized danger that injured the plaintiffs, yet the Government declined to do anything about it.  *S.R.P.*, 676 F.3d at 339-40.  Although Johnson maintains in her complaint that the Government "knew or should have known" of the walkway's uneven stone, in her response to the Government's factual attack on jurisdiction, she did not supplement the record with any facts that would indicate such knowledge.  As such, the Court finds that the Government did not know of the particularized danger that the alleged hazard on sidewalk caused.